IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AARON NEEDHAM aka AARON D.T. NEEDHAM, an individual,<br><br>                    Plaintiff,<br><br>         v.<br><br>FANNIE MAE; eTITLE INSURANCE AGENCY, a Utah limited liability company; WELLS FARGO BANK, N.A., a South Dakota Corporation;  SHALOM RUBANOWITZ, an individual; 2020 PROPERTIES LLC, a Utah limited liability company; KRISTINE J. CARTER, an individual; and DOES 1-25 [Individual, Partnerships, Corporations or anyone claiming any interest to the property described herein],<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT WELLS FARGO BANK  N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2-11-CV-00260 DN<br><br>Magistrate Judge David Nuffer |

This case is before the magistrate judge by consent of the parties pursuant to 28 U. S. C. § 636(c).  The magistrate judge has reviewed Defendant Wells Fargo Bank, N.A.'s (Wells Fargo) Motion for Judgment on the Pleadings.[1]  For the reasons set forth below, Wells Fargo's motion is GRANTED.

## Nature of this Case

This case was removed from Fifth Judicial District Court, Washington County, State of Utah by the consent of all defendants served.[2]  Wells Fargo seeks a judgment of dismissal based on the pleadings, pursuant to 12(c) of the Federal Rules of Civil Procedure, on Needham's twelve claims for (i) breach of contract; (ii) breach of the implied covenant of good faith and fair

---

[1] Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings, docket no. 41, filed August 10, 2011.

[2] Notice of Removal, docket no. 2, filed March 17, 2011.

dealing; (iii) promissory estoppel; (iv) unjust enrichment; (v) fraud; (vi) setting aside the trustee's sale; (vii) voiding the trustee's deed; (viii) voiding assignment of the trustee's deed; (ix) negligence; (x) wrongful foreclosure; (xi) declaratory relief and quiet title; and (xii) violation of the federal Fair Housing Act.[3]

## Factual Overview

The factual setting for these claims is complex. This paragraph will provide a summary overview of relevant facts.

Needham borrowed money from Wells Fargo and from a superior lender. Wells Fargo foreclosed its lien unaware of Needham's bankruptcy filing. Therefore, Wells Fargo modified its loan terms by agreement with Needham, and received payments from Needham. Needham fell ill and stopped making payments. The superior lender foreclosed on the Needham property. Wells Fargo's lien was foreclosed along with Needham's equity position. Excess proceeds from that trustee's sale were interplead and adjudicated in Fifth District Court in Washington County, Utah.

## Standard for Judgment on the Pleadings

The standard of review for dismissal under Rule 12(c) is the same as the standard for dismissal under Rule 12(b)(6).[4] Accordingly, the Court takes as true all of Plaintiff's well-pleaded factual allegations, but need not accept "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[5] The Court should dismiss Plaintiff's claims unless the well-pleaded allegations in the Complaint "state a claim for

---

[3] Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings, at 2.

[4] *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

[5] *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009)).

relief that is plausible on its face."[6] Consistent with the approach that this motion is a true motion for judgment on the pleadings, Wells Fargo relied in its motion on facts "either taken from Plaintiff's Complaint . . . or . . . from the attached exhibits, which are copies of documents referred to in Plaintiff's Complaint and central to Plaintiff's claims."[7]

Needham has objected to the use of this standard because Wells Fargo has "introduced several exhibits as part of their motion for judgment on the pleadings" which "are not part of the initial complaint and its exhibits."[8] Therefore, Needham says "the motion to dismiss must be converted to one for summary judgment."[9]

However, all exhibits Wells Fargo has introduced are copies of documents referred to in Plaintiff's Complaint and central to Plaintiff's claims. The use of exhibits specifically referenced by Plaintiff does not convert a pleadings-based motion to a motion for summary judgment.

> [I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.
>
> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.[10]

---

[6] *Bixler*, 596 F.3d at 756 (quoting *Iqbal*, 129 S.Ct. at 1949).

[7] Wells Fargo Bank, N.A.'s Memorandum in Support of Motion for Judgment on the Pleadings (Supporting Memorandum) at 3, docket no. 42, filed August 10, 2011.

[8] Memorandum in Opposition to Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings (Opposing Memorandum) at 2, docket no. 53, filed September 14, 2011.

[9] *Id*.

[10] *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F. 3d 1381, 1384-85 (10th Cir. 1997) (citations omitted).

Because Needham is obviously aware of documents he referenced in, but failed to attach to his complaint, Wells Fargo is entitled to supply the actual documents to the court and rely on them in a motion for judgment on the pleadings.

Needham did file an affidavit alleging facts outside the complaint.[11] These facts relate to a defective foreclosure conducted by Wells Fargo *before* a loan modification between the parties and *before* the foreclosure sale of another trust deed which eventually resulted in Needham's eviction from the home. Therefore, the four factual paragraphs of his affidavit are not material to any viable claims. That affidavit does not convert this motion to a motion for summary judgment.

Needham also provided (without authentication) a copy of the Notice of Trustee's Sale from the defective Wells Fargo foreclosure;[12] and documents from the Office of the Comptroller of the Currency;[13] and a court docket from the interpleader of funds from the actual foreclosure sale.[14] None of these are pertinent to an analysis of claims under the Complaint.

## FACTS ALLEGED IN THE COMPLAINT

Wells Fargo's opening memorandum[15] relied on the following facts, "either taken from Plaintiff's Complaint . . . or . . . from . . . copies of documents referred to in Plaintiff's Complaint . . . ."[16] The facts retain the numbering given in Wells Fargo's Supporting Memorandum. Citations to the Complaint are omitted.

> 1. Plaintiff purchased property described as "All of lot ninety-seven (97), Pine View Estates—Phase 5, a residential subdivision, according to the official plat

---

[11] Second Affidavit of Aaron Needham, docket no. 53-4, Exhibit F, filed September 14, 2011.

[12] Exhibit A to Opposing Memorandum.

[13] Exhibits B – D to Opposing Memorandum.

[14] Exhibit E to Opposing Memorandum.

[15] Supporting Memorandum at 3-5. Citations to supporting documents have been omitted.

[16] Supporting Memorandum at 3.

thereof on file in the office of the Washington County Recorders Office, State of Utah (the "Property") in September 1995 under a purchase money mortgage provided by Zions First National Bank ("Zions"). Plaintiff paid off that loan in March 1996.

2. In May 1997, Plaintiff obtained a second loan from Zions, again secured by the Property.

3. In June 1999, Plaintiff obtained yet another loan, this time from Sunbelt National Mortgage, which was again secured by the Property. The Zions deed of trust was subordinated to this Sunbelt deed of trust, so that Sunbelt was in first position and Zions was in second.

4. On or about May 16, 2003, Plaintiff executed an "EquityLine with Convertible Loan Feature Account Agreement" (the "line of credit") from Wells Fargo, pursuant to which he was authorized to borrow up to $73,000 from Wells Fargo.

5. As security for the line of credit, Plaintiff executed a Short Form Deed of Trust to the Property in favor of Wells Fargo which incorporated by reference a Master Form Deed of Trust previously recorded by Wells Fargo.

6. Plaintiff borrowed funds from Wells Fargo under the line of credit and then defaulted on his loan.

7. On or about July 9, 2008, the trustee under the Wells Fargo Deed of Trust executed a Notice of Default and Election to Sell (the "Notice of Default") and recorded the Notice of Default in the official records of the Washington County Recorder, with an entry number of 20080027726.

8. Plaintiff did not cure his default. On December 17, 2009, the trustee under the Wells Fargo Deed of Trust conducted a non-judicial foreclosure of the Property.

9. Wells Fargo purchased the Property at the December 17 foreclosure sale, and paid funds to discharge Plaintiff's debt to the two senior lenders in an attempt to elevate the priority of its third-position lien.

10. On December 17, 2009, without notice to Wells Fargo, Plaintiff filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. As a result, once Wells Fargo learned of this second bankruptcy, it sought to rescind its payoffs to the two senior lenders. The first position lender returned the funds; the second position lender, Zions Bank, did not. Instead, Zions credited Plaintiff's account and recorded a Deed of Reconveyance releasing its security interest in the Property.

11. Plaintiff did not move to set aside Wells Fargo's foreclosure during this second bankruptcy. Instead, he sought a continuance of his bankruptcy confirmation hearing to enable Wells Fargo to resolve these issues with the other lenders.

12. During that time, Plaintiff, who was represented by bankruptcy counsel, negotiated with Wells Fargo to restructure his Wells Fargo and Zions debts. As a result, the amount Wells Fargo paid to Zions was made part of Plaintiff's principal obligation to Wells Fargo. Plaintiff's monthly payment amounts were reduced to $388.58 per month and the interest rate, which previously was variable, with a floor of 4.49%, was reduced to 0.0%.

13. Thereafter, Plaintiff's chapter 13 bankruptcy was dismissed on or about June 7, 2010.

14. Later that month, on June 23, 2010, the trustee under the Fannie Mae deed of trust, the successor on the original Sunbelt Deed of Trust, recorded a notice of default. Five months later, on November 4, 2010, Fannie Mae foreclosed on the Property—not Wells Fargo. A third party, defendant 2020 Properties, LLC, purchased the Property at the Fannie Mae trustee's sale for $161,000 and has since taken possession of the Property.

In his opposing memorandum,[17] Needham cited additional material facts from the Complaint, and from two unauthenticated exhibits attached to his memorandum. Facts which are not material are not restated here. Numbering is retained from Needhams' statement:

[Facts 1-3 related to Mr. Needham's disability.]

4. In Spring of 2009, Plaintiff applied for and was successful in receiving a loan modification from Wells Fargo. Payments were made under the agreement until foreclosure.

[Fact 5 notes Wells Fargo's answer admits the preceding Fact 4.]

[Fact 6 refers again to Plaintiff's disability.]

7. In November 2009, Plaintiff informed Wells Fargo that he needed to make new arrangements for his loan modification since he had been unable to start work because he had contracted MRSA while staying in the hospital due to his disability.

8. After accepting payments and being informed about the sickness, Defendant Wells Fargo informed Plaintiff that they were no longer going to follow the loan modification agreement and were going to foreclose on the real property.

9. On October 8, 2009, October 15, 2009 and October 22, 2009, Defendant Wells Fargo published notice of its Trustee's Sale regarding the subject property.

---

[17] Opposing Memorandum at 3-7. Citations to supporting documents have been omitted.

6

[Facts 10 - 12 relate to the invalid Wells Fargo foreclosure in December 2009.]

[Facts 13 – 21 relate to the Office of the Comptroller of the Currency.]

22. The property was the subject of a trustee's sale that was held on November 4, 2010.

23. At the foreclosure sale, defendant 2020 Properties LLC was the successful bidder, bidding and paying the sum of $161,000.00 for the trust deed property. That sum exceeded the total amount owed to the first lien-holder of the trust deed.

24. After deducting attorney's fees and costs of submitting the excess sale proceeds, the trustee submitted the excess sale proceeds in the amount of $14,776.86 to the Washington County District Court Clerk in accordance with provisions of § 57-1-29, Utah Code Annotated.

[Fact 25 refers to a result in an allegedly similar case in this court.]

26. Wells Fargo also had constructive notice of Mr. Needham's bankruptcy filing because it is a matter of public record.

These additional facts marshaled by Needham do not cure the failure of the complaint to state a claim.

## DISCUSSION

Needham fundamentally misunderstands the issues in the case. The opening page of his memorandum opposing this motion refers to the admittedly invalid, ineffectual Wells Fargo foreclosure: "Mr. Aaron Needham (hereinafter "Mr. Needham") seeks to recover possession of his home that was wrongfully foreclosed on by Wells Fargo . . . . Wells Fargo did not follow proper procedure in foreclosing on Mr. Needham."[18] He refers later to the Wells Fargo foreclosure: "[T]his case presents issues of material fact about whether defendant Wells Fargo . . . allowed for fraud or irregularities when they foreclosed . . . ."[19] Needham also claims that issues with the Wells Fargo documentation prevent the court from granting this motion. "Thus, whether the assignment of trust deed/mortgage, substitution of trustee, or notice of default

---

[18] Opposing Memorandum at 1.

[19] *Id.* at 9.

were ever properly recorded and whether there is a properly negotiated promissory note in this case are genuine issues of material fact that must be submitted to a jury."[20]

With this fixation on the Wells Fargo loan and its foreclosure, Needham's arguments miss the point of Wells Fargo's motion. Wells Fargo conducted an invalid foreclosure sale, but that only resulted in a very favorable loan modification. Wells Fargo was foreclosed out and was not the party that foreclosed him out. When Needham lost his property, Wells Fargo lost its security.

**Contract-Related Claims**

Needham's verified complaint contains four contract-related claims against Wells Fargo: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; and (4) unjust enrichment.[21] Needham's papers on this motion do not argue the viability of these claims.

In his breach of contract claim[22] Needham alleges

> The Foreclosing Defendants [defined to include Wells Fargo[23]] breached the note and deed of trust by failing to account for and apply the payments made by Plaintiff to Plaintiff's loan, the result of which led to the Foreclosing Defendants eventually foreclosing on the Subject Property.[24]

Needham suffered no loss by any foreclosure by Wells Fargo. That foreclosure was rescinded after the automatic bankruptcy stay was discovered. The actual foreclosure of Needham's property was under the superior lien, the Sunbelt Trust Deed. Therefore any misapplications of payments by Wells Fargo had no effect on his loss of the property.

---

[20] *Id.* at 10.

[21] Verified Complaint (Complaint), docket no 2-1, filed March 17, 2011.

[22] Complaint ¶¶ 76-83..

[23] *Id.* ¶ 10.

[24] *Id* .¶ 79.

Needham also says "Wells Fargo breached its loan modification agreement."[25] He fails to specify how. Needham entered into a loan modification on April 29, 2010 which extinguished any prior agreements or preexisting contractual duties between the parties.[26] He admits the modification,[27] but fails to identify any specific breach of that modification agreement. He does allege that "[o]n or about July 2010, Plaintiff received notice that the owner of the Sunbelt loan was filing bankruptcy and would no longer be able to offer their loan modification."[28] But this is a breach of a different modification agreement with a different lender, not a breach of Wells Fargo's modification agreement.

In his claims for breach of the covenant of good faith and fair dealing,[29] Needham alleges that Wells Fargo "engaged in [bad faith] conduct to drive Plaintiff into foreclosure so that they could acquire the Subject Property with its large equity at a bargain basement price."[30] He also alleges other bad faith conduct "when Wells Fargo allowed their alleged agent to execute the Trustee's Deed, Notice of Default and Substitution of Trustee (in order to appoint a new Trustee to begin foreclosure on the Subject Property)."[31] Needham's complaint does not explain why these standard foreclosure activities constitute bad faith conduct, and in his papers on this motion does not argue to save this cause of action.

Needham's claims for promissory estoppel[32] and unjust enrichment[33] fail as a matter of law because the parties had an enforceable contract. "Recovery in quasi contract is not available

---

[25] *Id.* ¶ 81.

[26] Supporting Memorandum at 8.

[27] Complaint ¶ 80.

[28] *Id.* ¶ 42.

[29] *Id.* ¶¶ 84-89.

[30] *Id.* ¶ 87.

[31] *Id.* ¶ 89.

[32] *Id.* ¶¶ 92-97.

where there is an express contract covering the subject matter of the litigation."[34]  Needham's opposition to the motion also fails to counter Wells Fargo's arguments on this point.

**Negligence Claim**

Needham's negligence claim alleges that Wells Fargo, " 'acting as plaintiff's lender and loan servicer,' breached a duty to Plaintiff by (1) foreclosing on the property 'without legal authority,' (2) failing to maintain proper loan records, and (3) failing to accurately credit Plaintiff's payments to his account."[35]  Wells Fargo argues that these claims "constitute alleged breaches of *contractual* duties, and so [damages] are not recoverable in tort" under the economic loss rule.[36]

When the parties' relationship is governed by contract, the economic loss rule provides that "economic damages are not recoverable in negligence absent physical property damage or bodily injury."[37]  Needham has not alleged any physical property damage.  He does not argue that any physical property damage occurred to take his claims out of the economic loss rule.

Needham argues that there is a fiduciary duty between a trustee and a trustor under a deed of trust, which gives rise to a tort-based duty of care and therefore the economic loss rule does not apply to claims arising out of non-judicial foreclosures.[38]  However, as a matter of law, fiduciary duties do not exist between a lender and a borrower.[39]  And while a plurality opinion in

---

[33] *Id.* ¶¶ 98-104.

[34] *MediaNews Group, Inc. v. McCarthey*, 432 F. Supp. 2d 1213, 1238 (D. Utah 2006) (quoting *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978)).

[35] Supporting Memorandum at 9-10 (quoting Complaint ¶¶ 112-113).

[36] *Id.* at 10 (emphasis in original).

[37] *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 (Utah 2001) quoting *American Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1189 (Utah 1996).

[38] Opposing Memorandum at 12.

[39] *Ramos v. Countrywide Bank, FSB*, Case No. 2:09-CV-449 TS, 2009 U.S. Dist. LEXIS 99909, at *14 (D. Utah Oct. 26, 2009) (unpublished).  See also *State Bank of S. Utah v. Troy Hygro Sys., Inc.,* 894 P.2d 1270, 1275 (Utah Ct. App. 1995) ("Ordinarily, no fiduciary relationship exists between a bank and its customer").

one Utah case has found fiduciary duties to exist between a debtor and trustee of a trust deed, that case involved a trustee with which the debtor had "a significant previous business history . . . ."[40] No similar facts are alleged here. There is no support for Needham's argument that the economic loss rule does not apply.

**Claim for Fraud and Derivative Claims**

Plaintiff also asserts three claims based on fraud. The most substantial claim is based on Wells Fargo's alleged false promise to negotiate a loan modification alleged in the eleventh cause of action.[41] This claim is barred by the statute of frauds which requires that any contract establishing an interest in real property must be written to be enforceable.[42] "The rule is well settled in Utah that if an original agreement is within the statute of frauds, a subsequent agreement which modifies the original written agreement must also satisfy the requirements of the statute of frauds to be enforceable."[43] Needham cannot sue on an unenforceable oral promise to make an agreement regarding real property.

Needham's papers on this motion fail to address Wells Fargo's assertion that his fraud claims are barred by the statute of frauds. Needham argues in his papers that he was a victim of constructive fraud by reason of a "confidential relationship" between him and Wells Fargo, and breach of fiduciary duties by the Wells Fargo foreclosure.[44] However, the complaint does not contain any allegations of constructive fraud or breach of fiduciary duty.[45]

---

[40] *Blodgett v Martsch*, 590 P.2d 298, 300 (Utah 1978).

[41] Complaint ¶¶ 115-128.

[42] Utah Code Ann. §§ 25-5-1, 25-5-3.

[43] *Golden Key Realty v. Mantas*, 699 P.2d 730, 732 (Utah 1985).

[44] Opposing Memorandum at 12.

[45] A constructive fraud claim requires: "(i) a confidential relationship between the parties; and (ii) a failure to disclose material facts*." d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 526 (Utah Ct. App. 2006) (quoting *Jensen v. IHC Hosps.*, 944 P.2d 327, 339 (Utah 1997)).

Needham's complaint also mentions fraud in his first cause of action to "Set Aside Trustee's Sale" and second cause of action to "Void the Trustee's Deed." Apparently fraud is the basis for the relief sought, though fraud is not particularly plead.

> The Foreclosing Defendants committed fraud in the process of foreclosing, because they failed to disclose to Plaintiff that they never had the intention to modify his loan, which is a material fact.[46]

> Although the trustee's deeds upon sale appears [sic] valid on their face, they are invalid, and of no force and effect, for the reasons set forth above . . . along with the fraudulent conduct and irregularities in the process.[47]

These causes of action state no factual basis for fraud. The only factual basis for fraud is alleged in the eleventh cause of action, which has been shown to be an insufficient allegation. The first cause of action to "Set Aside Trustee's Sale" and second cause of action to "Void the Trustee's Deed" fail to state a fraud claim.

*Foreclosure-Related Claims*

   a. *Wrongful Foreclosure*

Needham's wrongful foreclosure cause of action alleges that (1) his note was sold to investors; (2) Wells Fargo does not have the original note to prove that it was authorized to conduct a foreclosure; and (3) Wells Fargo sold Plaintiff's loan without notifying him in writing.[48] None of these arguments are viable. The Utah Court of Appeals and this court have rejected the notion that the sale or transfer of a note to investors has any effect on the beneficiary's security interest.[49] Additionally, "Utah law on nonjudicial foreclosure contains no

---

[46] Complaint ¶ 60.

[47] *Id.* ¶ 65.

[48] *Id.* ¶¶ 71-73.

[49] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys.*, 263 P.3d 397, 401-04 (Utah Ct. App. 2011), *cert. denied*, ___ P.3d ___(Utah Dec. 14, 2011); *Nielsen v. Aegis Wholesale Corp.*, No. 2:10CV606 DS, 2011 U.S. Dist. LEXIS 48029, at *5-7 (D. Utah. May 4, 2011). *See also Commonwealth Property Advocates, LLC v.*

requirement that the beneficiary produce the actual note . . . ."[50] Finally, Needham has not offered any authority that requires that a borrower must be notified in writing that his loan is being transferred.

Needham argues that "Utah allows for recovery under a wrongful foreclosure claim, where the injured party 'seeks to have a trustee sale set aside for irregularity, want of notice, or fraud.'"[51] However, Needham does not allege any facts to support those assertions, but conclusorily argues "non-compliance with Utah's statutory non-judicial foreclosure scheme."[52] If Needham is alleging that Wells Fargo's 2009 foreclosure was wrongful, he is pursuing a wrong without a remedy because the April 29, 2010 Permanent Loan Modification renewed the relationship of these parties *after* that foreclosure.

b. *Quiet Title and Declaratory Relief*

Needham's ninth cause of action seeks to quiet title in himself and "a judicial declaration that the title to the Subject Property is vested in Plaintiff alone . . . ."[53] He "seeks to quiet title as of November 17, 2010, the date of the foreclosure sale and/or Trustee's Deed issued to 2020 Properties."[54] Wells Fargo's interest, like Needham's interest, was foreclosed by the November 2010 sale. Needham states no claim against Wells Fargo in this cause of action.

---

*Mortg. Elec. Registration Sys.*, ___ F.3d ___, 2011 WL 6739431, at*6-7 (10th Cir. Dec. 23, 2011) (discussing Utah law and concluding that the plaintiff's claims, similar to those asserted in this case, have no legal basis under Utah law).

[50] *McGinnis v. GMAC Mortg. Corp.*, No. 2:10-cv-00301-TC, 2010 U.S. Dist. LEXIS 90286, at *7 (D. Utah Aug. 27, 2010) (unpublished).

[51] Opposing Memorandum at 13-14 (quoting *Concepts, Inc. v. First Sec. Realty Servs., Inc*. 743 P.2d 1158, 1159 (Utah 1987)).

[52] *Id.* at 14.

[53] Complaint ¶ 110.

[54] *Id*.

    *c. Claim to Excess Proceeds of Sunbelt Foreclosure Sale*

In his Opposing Memorandum, Needham inexplicably requests that Wells Fargo pay over excess proceeds from the November 2010 Sunbelt foreclosure sale.[55] This claim is not raised in the complaint. Wells Fargo received payment of these proceeds as a result of a state court proceeding between these parties.[56] This court will not revisit that result.

**Fair Housing Act Claim**

Needham alleges that Wells Fargo violated the Fair Housing Act under 42 U.S.C. § 3604(f) by refusing to "make reasonable accommodations in rules, policies, practices, or services," under section 3604(f)(3)(B), when such accommodations may have helped to afford Mr. Needham "equal opportunity to use and enjoy a dwelling."[57] However, Section 3604(f)(1) prohibits "discrimina[tion] in the sale or rental of, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." Needham was not denied the ability to buy or rent a home. Therefore, he states no Fair Housing Act Claim. Needham's motion papers made no argument in support of this claim.

---

[55] Opposing Memorandum at 12-13.

[56] Case Docket for *In Re Proceeds of Sale of 2387 Coletero Circle*, Case No. 110500174, State of Utah Fifth District Court, attached as Exhibit E to Opposition Memorandum.

[57] Complaint ¶ 150.

## ORDER

IT IS HEREBY ORDERED that Wells Fargo Bank, N.A.'s Motion for Judgment on the Pleadings[58] is GRANTED. All claims against Wells Fargo Bank N.A. are dismissed with prejudice.

Dated February 21, 2012.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge

---

[58] Docket no. 41, filed August 10, 2011.